# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR YACULLO,<br><br>                Plaintiff,<br><br>v.<br><br>AIG PROPERTY CASUALTY COMPANY,<br><br>                Defendant. | Case No. 23-cv-2019-MMA (MSB)<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 15] |

      Plaintiff Victor Yacullo ("Plaintiff") brings this insurance coverage dispute against Defendant AIG Property Casualty Company ("Defendant"). Doc. No. 1. Presently before the Court is Defendant's motion for summary judgment or, alternatively, partial summary judgment. Doc. No. 15. Plaintiff filed an opposition, Doc. No. 16, to which Defendant replied, Doc. No. 17. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 18. For the reasons set forth below, the Court **DENIES** Defendant's motion.

# I. Background[1]

Defendant issued Plaintiff a "Private Collections" insurance policy with policy number PCG 0029174764, which was effective November 28, 2021 through November 28, 2022 (the "Policy").  Doc. No. 16-1 ("Plaintiff's Response to Defendant's Separate Statement" or "PRS") at No. 1; *see also* Doc. No. 15-5 ("Defendant's Exhibit B" or "Exh. B") at 2–4.[2]  The Policy was a renewal of an insurance policy Plaintiff initially obtained through Defendant's authorized agent, Burns & Wilcox of San Diego,[3] on November 28, 2016.  Doc. No. 16-2 ("Declaration of Victor Yacullo" or "Yacullo Decl.") ¶ 2.  Among other things, the Policy covered various items of jewelry through a "Schedule of Items" endorsement, which described each item of jewelry and assigned a specific insured amount for each item.  *Id.* ¶ 3.

On or around September 8, 2021, Plaintiff proposed to his then-fiancée, Ashley Harris, and presented her with a diamond engagement ring (the "Ring").  PRS at No. 3; Yacullo Decl. ¶ 4; Doc. No. 15-7 ("Examination Under Oath of Victor Frank Yacullo" or "Yacullo EUO") at 5–6.  Ms. Harris accepted Plaintiff's proposal and the Ring.  Yacullo Decl. ¶ 4.  That same day, Plaintiff requested that Defendant add coverage for the Ring to the Policy's Schedule of Items.  Yacullo Decl. ¶ 5.  On September 9, 2021, Defendant issued Plaintiff a revised "Declarations Page" that confirmed the Ring was added to the Policy's Schedule of Items for an additional premium.  *Id.* ¶ 6; Doc. No. 16-4

---

[1] These material facts are taken from Defendant's separate statement and Plaintiff's response thereto, as well as the parties' supporting declarations and exhibits.  Disputed material facts are discussed in further detail where relevant to the Court's analysis.  Facts that are immaterial for purposes of resolving the current motions are not included in this recitation.

[2] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

[3] Plaintiff requests judicial notice of the "California Department of Insurance's identification of insurers on whose behalf Burns & Wilcox Insurance Services, Inc. is authorized to transact."  Doc. No. 16-11 at 2.  Defendant does not oppose Plaintiff's request.  The Court finds this document proper for judicial notice and therefore **GRANTS** Plaintiff's request.  Fed. R. Evid. 201(b) (stating that a court may take judicial notice of facts not subject to reasonable dispute); *see Associated Indus. Ins. Co., Inc. v. Bandari*, No. 22-cv-05477-CAS-ASx, 2023 WL 5174901, at *5 (C.D. Cal. Aug. 10, 2023) (granting request for judicial notice as to California Department of Insurance's license details of insurance broker) (quoting *Mack v. S. Bay Beer Distribs. Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

("Plaintiff's Exhibit 2" or "Exh. 2") at 2–4.  Ms. Harris was never listed as an insured under the Policy.  PRS at No. 8.  The Ring is described in the Schedule of Items as follows:

> ONE 18KT WHITE GOLD CUSTOM DESIGNED DIAMOND ENGAGEMENT RING DESIGNED BY UNEEK.  SET TO CENTER IN 4-PRONG HIDDEN DIAMOND HALO HEAD IS ONE 5.52CT OVAL BRILLIANT CUT DIAMOND MEASURING 14.78 X 9.61 X 6.10MM OF E COLOR, SI1 CLARITY WITH EXCELLENT POLISH AND SYMMETRY.  THIS DIAMOND IS GIA CERTIFIED AND LASER INSCRIBED: GIA 1216246657.  THE CENTER DIAMOND IS SECURED ON A 2MM BAND 4-SHARED PRONG HEADS WITH (24) ROUND BRILLIANT CUT DIAMONDS. SI1 CLARITY AND F-G COLOR, GOING 3/4 WAY DOWN SHANK AND (26) ROUND B RILLIANT CUT DIAMONDS IN HIDDEN HALO UNDER CENTER DIAMOND AND AT BASE OF HEAD, 0.82CTTW. STYLE #5228935. SIZE 6.5.

*See* Exh. 2 at 3–4 ; *see also* Exh. B at 3–4.  The Ring is listed with an "Amount Insured" of $207,690.  PRS at No. 2; *see also* Exh. B at 3.

After Ms. Harris accepted the Ring and Plaintiff's marriage proposal, Plaintiff later gave Ms. Harris a handwritten card.[4]  PRS at No. 4; Yacullo Decl. ¶ 15; Doc. No. 15-8 at 6–7 ("Examination Under Oath of Ashely Belle Harris" or "Harris EUO") at 6–7.  The following was written on the card:

> This ring was meant for you and symbolizes my undying eternal love for you.  I so want you 2B my wife and 2B your husband . . . But if you choose otherwise, the ring is my gift 2U . . . always will be.  Love, Victor.

PRS at No. 5; *see also* Harris EUO at 7–8.

---

[4] The record includes several different dates that Plaintiff gave Ms. Harris the card.  *See, e.g.*, PRS at No. 4; Yacullo Decl. ¶ 15.  However, it appears most likely that the card was given to Ms. Harris on September 23, 2021.  *See* Harris EUO at 6–7 (noting that the card was dated September 23, 2021).  Importantly, neither party alleges that the card was given to Ms. Harris before the proposal or simultaneously when Plaintiff proposed with the Ring.

On July 19, 2022, Plaintiff reported to Defendant that the Ring was lost. PRS at No. 6. At the time of the loss, Plaintiff and Ms. Harris were still engaged to be married, however, they did not have a wedding date set.[5] PRS at No. 14; Yacullo Decl. ¶ 8. In addition, although Ms. Harris spent more than half her time living with Plaintiff, Plaintiff and Harris maintained separate homes. PRS at No. 7; Yacullo Decl. ¶ 8. On January 23, 2023, Plaintiff purchased a replacement diamond engagement ring for $195,000. PRS at No. 25; Yacullo Decl. ¶ 14.

The Policy states that Defendant "will not pay for any loss to property in which you or a family member does not have an insurable interest at the time of the loss." PRS at No. 22; Exh. B at 15. The Policy defines "family member" as "a person related to you by blood, marriage or adoption that lives in your household." PRS at No. 24; Exh. B at 12. In addition, the Policy states:

> The words "you[,]" "your" and "yours" refer to the person, persons, LLCs, trusts, corporations or entities named on the Declarations Page as the Named Insured and any family members who live in the same household.

PRS at No. 23; Exh. B. at 12. Moreover, the Policy defines "valuable article" as "the personal property you own or possess for which an amount of coverage is shown on the Declarations Page." PRS at No. 26; Exh. B at 12.

On June 23, 2023, Defendant denied Plaintiff's claim because "the [R]ing in question was given by [Plaintiff] to Ms. Harris unconditionally before the reported loss" and therefore, Plaintiff had no insurable interest in the Ring. PRS at No. 20; *see also* Doc. No. 15-11 ("Coverage Letter") at 20. In addition, Defendant stated that "because [Plaintiff] neither owned nor possessed the . . . [R]ing" at the time of the loss, "the [R]ing is not a covered valuable article." Coverage Letter at 20.

---

[5] According to Plaintiff, he and Ms. Harris are no longer in a relationship. Yacullo Decl. ¶ 15.

Following the denial of his claim, Plaintiff filed this lawsuit on November 1, 2023. Doc. No. 1. Plaintiff brings three causes of action against Defendant: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) declaratory relief. *See generally id.*

## II. LEGAL STANDARD

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, set forth specific facts showing that there is a genuine issue for trial. *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102. In order to make this showing, the non-moving party must "identify with reasonable

particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must take care to adequately point a court to the evidence precluding summary judgment because a court is "not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (citation omitted). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### III. E<small>VIDENTIARY</small> O<small>BJECTIONS</small>

Plaintiff appears to object to Defendant's use of Plaintiff's handwritten card to Ms. Harris as evidence because it did not "provide the entirety of the content of the card or a copy of the card" and because he no longer has access to the card. Doc. No. 16 at 17 n.2. Because of this, Plaintiff argues Defendant's "attempt to prove the content of the card through the testimony of Ms. Harris, who is not a party to this action, violates the best evidence rule. *Id.* The Court notes that Plaintiff does not dispute the existence of the card, that he gave Ms. Harris the card, or that the card contained the above language. PRS at Nos. 4–5.

Defendant asserts several objections to paragraph 12 of Plaintiff's declaration, which states the following:

> Shortly after acknowledging the Claim, AIG requested several broad categories of documents, some of which appeared to have no relevance to the Claim, including all photographs and video recordings depicting the Engagement Ring, my monthly cell phone statement for the month of July 2022, and all of my bank, credit card, and other financial account statements for the month of July 2022. AIG's broad requests for information and overall handling of the Claim gave me the distinct impression that it suspected the Claim was somehow fraudulent.

Yacullo Decl. ¶ 12. Defendant argues that the above paragraph violates the best evidence rule because Plaintiff's "declaration does not provide the original correspondence" from

1  Defendant "that Plaintiff describes as overly broad and irrelevant to his claim."  Doc. No.
2  17-1 at 2.  In addition, Defendant argues that paragraph 12 of Plaintiff's declaration lacks
3  foundation and personal knowledge regarding Defendant's "alleged suspicion that
4  Plaintiff's claim 'was somehow fraudulent.'"  *Id.*

5  After reviewing the parties' evidence and their respective objections, the Court
6  finds that the parties' objections concern evidence that could be presented in an
7  admissible form at trial.  *See Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840,
8  846 (9th Cir. 2004) ("Even the declarations that do contain hearsay are admissible for
9  summary judgment purposes because they 'could be presented in an admissible form at
10 trial.'"); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1551
11 (9th Cir. 1990) (holding trial court's consideration of unauthenticated document on
12 summary judgment was harmless error where a "competent witness with personal
13 knowledge could authenticate the document"); *Garlick v. Cnty. of Kern*, 167 F. Supp. 3d
14 1117, 1125 (E.D. Cal. 2016) (summarily overruling objections at summary judgment on
15 the basis of relevance, hearsay, lack of foundation, lack of personal knowledge,
16 prejudice, improper character evidence, and assuming facts not in evidence); *Hunt v. City
17 of Los Angeles*, No. CV 17-8064 JFW (PVC), 2021 WL 768248, at *11 (C.D. Cal. Jan.
18 26, 2021) (noting that objections that evidence violates the "best evidence" rule go to the
19 form of the evidence rather than its ultimate admissibility), *report and recommendation
20 adopted*, 2021 WL 765418 (C.D. Cal. Feb. 26, 2021), *aff'd*, No. 21-55310, 2022 WL
21 3714490 (9th Cir. Aug. 29, 2022).  Indeed, at the summary judgment stage, district courts
22 consider evidence with *content* that would be admissible at trial, even if the *form* of the
23 evidence would not be admissible at trial.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036
24 (9th Cir. 2003); *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001).

25 Therefore, the Court **OVERRULES** the parties' objections at this time.  The
26 parties may reassert their evidentiary objections at a later stage in the proceedings.  *See
27 Tijerina v. Alaska Airlines, Inc.*, No. 22-CV-203 JLS (BGS), 2023 WL 4280794, at *13
28 (S.D. Cal. June 28, 2023).

## IV. Discussion

Defendant moves for summary judgment on Plaintiff's breach of contract cause of action, contending that Defendant appropriately denied policy benefits because Plaintiff did not have an insurable interest in the Ring at the time of the loss. Doc. No. 15-1 at 9–12. In addition, Defendant argues that Plaintiff neither owned nor possessed the Ring at the time of the loss, and therefore the Ring did not constitute a covered valuable article under the Policy. *Id.* at 16. As to Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing, Defendant contends that it is entitled to summary judgment "because [Defendant's] position in denying coverage was reasonable given the genuine dispute as to whether Plaintiff possessed an insurable interest in the Ring at the time of the loss." *Id.* at 16–17. These arguments will be addressed in turn.

### A. Breach of Contract

#### 1. General Legal Principles

Jurisdiction in this case is based upon diversity, and neither party disputes that the interpretation of the Policy is governed by California law. *See, e.g.*, *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (applying California insurance law in diversity case).

"Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003) (citation omitted); *see also Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) ("Under California law, the interpretation of contract language is a question of law.") (quotation omitted). The goal of such interpretation is to "give effect to the 'mutual intention' of the parties." *MacKinnon*, 31 Cal. 4th at 647 (citing Cal. Civ. Code § 1636). A contract's provisions are given their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." *Id.* at 647–48 (citing, *inter alia*, Cal. Civ. Code §§ 1638, 1644). "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. But language in a contract must be interpreted as a whole,

and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." *Id.* at 648 (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995)); *see also Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042–43 (9th Cir. 2020) ("[M]ost importantly, '[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.'") (quoting Cal. Civ. Code § 1641)). "[W]here contract language is ambiguous and unresolved by the more fundamental principles of interpretation," "ambiguous contract provisions should be construed against the drafter." *Int'l Bhd. of Teamsters*, 957 F.3d at 1042 (citing, *inter alia*, Cal. Civ. Code § 1654).

"[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon*, 31 Cal. 4th at 648 (quotation omitted). "[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear . . . the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." *Id.* (quotations omitted). "The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insurer to establish that the claim is specifically excluded." *Id.* (citation omitted). However, "[i]n the absence of any ambiguity, the courts have no alternative but to give effect to the contract of insurance as executed by the parties. Accordingly, when the terms of the policy are plain and explicit the courts will not indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed." *First Am. Title Ins. Co. v. XWarehouse Lending Corp.*, 177 Cal. App. 4th 106, 115 (2009) (quotation omitted).

2. Insurable Interest

The doctrine of insurable interest is codified in California Insurance Code § 280 *et seq*. "If the insured has no insurable interest, the contract is void." Cal. Ins. Code § 280. An "insurable interest" is defined as follows: "Every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might

directly damnify the insured, is an insurable interest." *Id.* § 281.  The word "damnify" has been construed by its dictionary definition to mean "'to cause loss or damage to.'" *Wexler v. California FAIR Plan Assn.*, 63 Cal. App. 5th 55, 72 (2021).  "An interest in the property insured must exist when the insurance takes effect and when the loss occurs." *Liberty Mut. Fire Ins. Co. v. McKenzie*, 88 Cal. App. 4th 681, 689 (2001) (citing *Int'l Serv. Ins. Co. v. Gonzales*, 194 Cal. App. 3d 110, 117–18 (1987)); *see also* Cal. Ins. Code §§ 280, 286.

The California Supreme Court established long ago that an insurable interest in property may exist without the insured having legal title to the property:

> [I]t is not necessary that the insured person have a legal interest, but that an equitable interest is sufficient.  The title, whether legal or equitable, may be defective or even bad, provided the insured has possession and use; even a valid equitable title is not requisite.  It is held sufficient that the insured has a direct pecuniary interest in the preservation of the property, and that he will suffer a pecuniary loss as an immediate and proximate result of its destruction.

*Davis v. Phoenix Ins. Co.*, 111 Cal. 409, 414 (1896) (citations omitted).

3. Analysis

The crux of Defendant's argument is that it did not err in denying Plaintiff's insurance claim because Plaintiff did not have an insurable interest in the Ring due to the fact that he gave Ms. Harris the Ring as an unconditional gift.  Doc. No. 15-1 at 6, 9.  Defendant relies on Plaintiff's handwritten card and Plaintiff's deposition testimony as evidence that Plaintiff intended the Ring to be an unconditional gift.  *Id.* at 6–7, 9.  Plaintiff argues that his card "did not abandon his insurable interest in" the Ring and that "the referenced excerpt from the card does not reflect the conferral of an immediate, unconditional gift.  Rather, the statement reveals an intent to make a future gift in the event Ms. Harris later decided [to] not marry [Plaintiff]."  Doc. No. 16 at 17 (citations omitted).

The Court finds that the dispositive question underlying Defendant's motion as to Plaintiff's breach of contract claim is whether a genuine issue of fact exists as to whether the Ring was an unconditional gift or a conditional gift dependent on the anticipated marriage of Plaintiff and Ms. Harris. There is no doubt that this issue is material, as Defendant's liability on each of Plaintiff's causes of actions is affected by it. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (observing that "material facts" are those facts that "might affect the outcome of the suit under the governing law"). The question is whether the factual dispute over the status of the Ring is "genuine," i.e., whether "the evidence is such that a reasonable juror could return a verdict for the nonmoving party." *Id.*

As stated by the Ninth Circuit in *United States v. Alcaraz-Garcia*, 79 F.3d 769 (9th Cir. 1996), "[i]n California, a gift is "a transfer of personal property, made voluntarily, and without consideration." *Id.* at 775 (citing and quoting California Civil Code § 1146). According to the Ninth Circuit, under California law, the elements of a gift are: (1) competency of the donor to contract; (2) a voluntary intent on the part of the donor to make a gift; (3) delivery, either actual or symbolic; (4) acceptance, actual or imputed; (5) complete divestment of control by the donor; and (6) lack of consideration for the gift. *Id.* (citing, *inter alia*, *Jaffe v. Carroll*, 35 Cal. App. 3d 53, 59 (1973) and *Turnbull v. Thomsen*, 171 Cal. App. 2d 779, 783 (1959)).

A gift in contemplation of marriage, such as an engagement ring, is still a gift as recognized by California statutory law, which provides:

> Where either party to a contemplated marriage in this State makes a gift of money or property to the other on the basis or assumption that the marriage will take place, in the event that the donee refuses to enter into the marriage as contemplated or that it is given up by mutual consent, the donor may recover such gift or such part of its value as may, under all of the circumstances of the case, be found by a court or jury to be just.

Cal. Civ. Code § 1590.

That is, such a gift is still a gift, but it is a *conditional* gift because the donor can bring an action to recover the gift if the donee refuses to enter into marriage as contemplated or the parties give up the contemplated marriage by mutual consent.

      Upon review of the record, the evidence is undisputed that Plaintiff made a gift of the Ring to his fiancée, Ms. Harris, when he proposed marriage in early September 2021, and she accepted. PRS at No. 3; Yacullo Decl. ¶ 4; Yacullo EUO at 5–6. Thus, at the time Plaintiff first gave Ms. Harris the Ring, it was a conditional gift pursuant to California Civil Code § 1590. Defendant contends that Plaintiff's handwritten card stating "[b]ut if you choose otherwise, the ring is my gift 2U" is evidence that Plaintiff intended the Ring to be an unconditional gift, which would eliminate any claim, ownership, or interest Plaintiff had in the Ring. Doc. No. 15-1 at 6–7, 9. However, Defendant does not dispute the fact that Plaintiff did not give Ms. Harris the card until, at least, multiple days after his initial proposal and Ms. Harris's acceptance of the Ring. In addition, Defendant concedes that if the Ring was *not* an unconditional gift, "Plaintiff would have had the right to recover the Ring if the engagement had been called off provided under California Civil Code section 1590." Doc. No. 17 at 7. Here, the Court finds that Plaintiff's intent and the meaning behind his handwritten card is disputed by the parties, i.e., whether Plaintiff intended to confer an immediate and unconditional gift of the Ring, or a future gift at some point in time when Plaintiff and Ms. Harris decided to not get married.[6] *See* Doc. No. 16 at 17. Moreover, the Court is not yet persuaded that even if Plaintiff never intended to seek return of the Ring, as evidenced by his deposition testimony—*see* PRS at No. 10, that this would change the conditional nature of the gift. Indeed, Defendant has presented the Court with no authority to support the assertion that the conditional nature of an engagement ring can be changed to an unconditional gift if the donor does not request the return of the Ring or that the nature of the Ring can be

---

[6] Defendant has not pointed to any undisputed evidence that Plaintiff and Ms. Harris were not engaged at the time the Ring was lost.

altered by words or actions by the donor *after* the gift was already initially accepted by the donee. Therefore, because the Court finds that there is a genuine issue of material fact as to whether the engagement ring was an unconditional gift at the time of the loss, and thus whether Plaintiff had an insurable interest in the Ring, the Court **DENIES** Defendant's summary judgment motion on the breach of contract cause of action.

### B.     Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff's second claim for breach of the implied covenant of good faith and fair dealing is partially contingent upon the success of his breach of contract claim, and, as discussed above, Plaintiff defeats the instant motion with respect to his breach of contract claim. *See Waller*, 11 Cal. 4th at 36 ("[T]he covenant [of good faith and fair dealing] is based on the contractual relationship between the insured and the insurer.") Defendant argues that even if the Court finds a genuine dispute regarding Plaintiff's breach of contract claim, summary judgment should be granted in its favor because its position in denying coverage was "reasonable given the genuine dispute as to whether Plaintiff possessed an insurable interest in the Ring at the time of the loss." Doc. No. 15-1 at 16. Plaintiff counters that the Court should deny Defendant's motion because Defendant "dragged out its investigation" for over six months and "failed to conduct a reasonable, fair, and unbiased investigation." Doc. No. 16 at 27.

In order to establish a breach of the implied covenant of good faith and fair dealing by an insurer under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause. *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). Unreasonable delays in claim handling can support a finding of bad faith. *Orange County Plastering Co., Inc. v. Am. Home Assurance Co.*, No. CV 11-06364 DDP (FMOx), 2011 WL 5117766, *2 (C.D. Cal. Oct. 28, 2011). In first-party insurance cases, as here, the "ultimate test of liability . . . is whether the refusal to pay policy benefits was unreasonable." *Austero v. Nat'l Cas. Co.*, 84 Cal. App. 3d 1, 31 (1978), *overruled on other grounds by Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809 (1979). An insurer

that unreasonably delays or fails to pay benefits due under the policy may be held liable in tort. *Maslo v. Ameriprise Auto-Home Ins.*, 227 Cal. App. 4th 626, 633 (2014) (citing *Rappaport-Scott v. Interinsurance Exch. of the Auto. Club*, 146 Cal. App. 4th 831, 837 (2007)). While the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence. *Chateau Chamberay Homeowners Assn v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001) (citing *Paulfrey v. Blue Chip Stamps*, 150 Cal. App. 3d 187, 198 (1983)).

Plaintiff's most compelling argument is that Defendant unreasonably delayed its investigation because it did not process his claim within forty days, as required by California insurance regulations. "Upon receiving proof of claim, every insurer . . . shall immediately, but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in part." 10 Cal. Code Regs. § 2695.7 (b). However, the insurance regulations also provide a mechanism for an insurer to notify an insured where it will take additional time to make a determination as to whether it will accept or deny the claim. *Id.* § 2695.7(c)(1). Under the provision, an insurer must provide written notice to the claimant of any additional information needed to evaluate the claim as well as the reasons the insurer is unable to make a determination, and must also provide written notice to the claimant every thirty days until a determination is made or notice of legal action is served. *Id.* In addition, "[i]f the determination cannot be made until some future event occurs, then the insurer shall comply with this continuing notice requirement by advising the claimant of the situation and providing an estimate as to when the determination can be made." *Id.* Plaintiff provides a declaration from his attorney Joshua D. Franklin, as well as email correspondences with Defendant's coverage counsel, Kevin D. Hansen, that demonstrate that although Plaintiff requested several updates on the status of Defendant's investigation, Defendant did not provide an estimate as to when it would make its decision. *See* Doc. No. 16-5 ¶¶9–13; Doc. No. 16-7; Doc. No. 16-8, Doc. No. 16-9.

In its reply, Defendant does not point the Court to any evidence to the contrary. Instead, Defendant only argues "[a]lthough Plaintiff asserts that [Defendant] acted in bad faith by violating provisions of the [California insurance regulations] in failing to respond to requests for estimates as to when a coverage decision would be made, there is no private right of action for such violation." Doc. No. 17 at 8 (citation omitted). This argument is unpersuasive. Although not dispositive, Defendant's violation of the California insurance regulations is a factor that may be considered by a jury in determining whether Defendant acted in good faith. *See Helus v. Equitable Life Assur. Society of U.S.*, 309 F. Supp. 2d 1170, 1176, n.5 (C.D. Cal. 2004) (recognizing that violations of California insurance regulations are not dispositive and are "simply one factor that the jury may consider in determining whether an insurance company acted in bad faith"); *see also* Judicial Council of California Civil Jury Instruction 2337 (2024) (noting that there is no private cause of action under the insurance code, but confirming the "instruction may be given in an insurance bad-faith action to assist the jury in determining whether the insurer's conduct was unreasonable or without proper cause). Therefore, at this stage, the Court finds that Plaintiff has presented evidence suggesting there is a genuine issue of material fact as to whether Defendant's delay in evaluating his claim was reasonable. Accordingly, the Court **DENIES** Defendant's summary judgment motion on the breach of implied covenant of good faith and fair dealing cause of action.

## V. Conclusion

For the reasons set forth above, the Court **DENIES** Defendant's motion for summary judgment in its entirety.[7]

**IT IS SO ORDERED**.

Dated: June 12, 2024

HON. MICHAEL M. ANELLO
United States District Judge

---

[7] To the extent Defendant also seeks summary judgment on Plaintiff's claim for declaratory relief, Doc. No. 1 at 3, its motion is also **DENIED** because, as discussed above, genuine issues of material fact exist regarding whether Defendant breached the contract and whether it breached the covenant of good faith and fair dealing in connection with Plaintiff's insurance claim.